# United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

_____

No. 96-3343

_____

Cynthia McCullough,                      *
                                         *
        Plaintiff - Appellant,   *  Appeal from the United States
                                 *  District Court for the
    v.                           *  District of Nebraska.
                                 *
Real Foods, Inc., doing business *
as Chubb's Finer Foods,          *
                                 *
        Defendant - Appellee.    *


_____

Submitted: March 10, 1997
 Filed:    April 3, 1998

_____

Before McMILLIAN, FLOYD R. GIBSON, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

    In this Title VII case, Cynthia McCullough alleges that her employer, Real Foods, Inc., discriminated against her based on her race. McCullough appeals from the district court's grant of summary judgment in favor of her employer. We reverse and remand for trial.

Viewed in the light most favorable to McCullough, the record reveals the following facts. Cynthia McCullough is a black woman with a college degree in urban affairs. In May 1992, McCullough began working at Chef Roy's Deli, which was at that time owned by her brother, Edsel Cook, and her uncle, Jesse Sawyer. Chef Roy's Deli leased space within Chubb's Finer Foods, a grocery store in Omaha, Nebraska.

Edsel Cook left the deli in early 1993, and on April 14, 1993, the assets of Chef Roy's Deli were sold to Chef Roy's, Inc., a newly formed corporation owned by Jesse Sawyer and Ron Meredith. Meredith also owned Real Foods, Inc., d/b/a Chubb's Finer Foods (Real Foods). In the summer of 1993, Meredith terminated his relationship with Sawyer. Real Foods immediately bought the assets of Chef Roy's Inc., d/b/a Chef Roy's Deli, and the deli became part of the grocery store, as it had been prior to 1992. After the sale, McCullough continued working at the deli, where she was supervised by the store's owner, Ron Meredith. She received an hourly rate of six dollars. Her hours varied greatly, ranging from part- to full-time.

In June 1993, Kathy Craven, a white woman, was hired to work part-time in the deli at Real Foods. She had prior experience as a checker at Real Foods and as a baker at Petit's Pastry in Omaha. However, she had no prior experience as a deli worker, and she had only a sixth-grade education. Her reading, writing, and mathematical skills were poor, and she required the assistance of McCullough in performing several deli functions. She could not, for example, calculate prices by herself, and she had difficulty reading recipes, according to McCullough.

In September 1993, approximately three months after Craven's arrival, Ron Meredith decided to appoint one of his deli employees "deli manager." At this time, McCullough and Craven were the only two deli employees. Meredith did not set up formal criteria for this employment decision, but rather relied on subjective criteria such

as his perception of each of the two employees' abilities, work ethic, and dedication to the job.

Meredith selected Craven for the job. Meredith cited several bases for his decision, including Craven's experience as a baker and as a checker, her strong work ethic, and her interest in full-time, long-term employment. He stated that McCullough was passed over because he understood that she would not work past 3:00 p.m., that she made frequent requests for time off, and that she felt she was overeducated for the position and planned to leave as soon as she found a better job. Additionally, he claimed that he had heard her speak of quitting, and that she had told him that she would not accept a managerial job for less than nine dollars per hour. McCullough denies all of these claims. She denies that she ever made such statements, asserts that she told Meredith she would be happy to work from nine to five, and states that Meredith's "understanding" of her opinions and intentions was either fabricated or based on false rumors.

As manager, Craven was paid six dollars per hour. Her hours were increased to full-time, and she was given the authority to make certain decisions with regard to the preparation and presentation of food in the deli. When she was paged, she was referred to as the deli manager. Persons requesting "the deli manager" were directed to her.

McCullough was paid the same hourly rate (six dollars) as Craven. When she complained of having been passed over, Meredith offered to give her a full-time position as well. Nonetheless, McCullough felt that she was hurt in intangible ways by the decision to name Craven deli manager. McCullough, who had worked at the deli much longer than Craven and who felt she was much more qualified than Craven for the job as manager, felt humiliated by Craven's appointment. On one occasion, a woman asked for the manager, and McCullough felt humiliated when the woman was directed to Craven. McCullough refused Meredith's offer of a full-time position and terminated her employment in September 1993.

McCullough believes that the decision to promote Craven over McCullough was an act of intentional racial discrimination. In support, she points to her superior education and more extensive deli experience. Additionally, she points to an incident in which Meredith greeted a white employee while ignoring her.

Although none of them were employed during McCullough's tenure, Real Foods has employed four black managers since its inception in 1985—two prior to her arrival and two since her departure. Three of the five (now six) managerial positions have seen little or no turnover: Two managers have been in place since the store's inception in 1985, and another has been in place since 1987.

McCullough filed a Title VII action in district court, claiming that Real Foods illegally discriminated against her on the basis of her race. The district court granted Real Foods' motion for summary judgment, and McCullough appeals, arguing that the district court erred in finding that she had failed to present evidence which created a genuine issue of material fact.

## II.

The sole issue on appeal is the district court's grant of summary judgment to Real Foods on McCullough's Title VII claim. Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a) (1994).

Federal courts award summary judgment when the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In awarding summary judgment to Real Foods, the district court held

that McCullough had failed to create an issue of material fact regarding the existence of intentional discrimination. We review de novo, construing the record in the light most favorable to McCullough. *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 258 (8th Cir. 1996).

### A. The McDonnell Douglas Burden-Shifting Framework

McCullough offers no direct evidence of discriminatory intent. We therefore analyze the facts under the burden-shifting framework set out in *McDonnell Douglas* and its progeny. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714-15 (1983); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, McCullough must first present evidence that will establish a prima facie case. In this failure to promote case, McCullough must demonstrate the following four elements: (1) that she belonged to a protected class, (2) that she met the minimum qualifications and applied for the position, (3) that despite her qualifications she was denied the position, and (4) that her employer promoted a person of similar qualifications who was not a member of the protected group. *Marzec v. Marsh*, 990 F.2d 393, 395-96 (8th Cir. 1993); *see also McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253 n.6; *Hase v. Missouri Div. of Employment Sec.*, 972 F.2d 893, 896 (8th Cir. 1992), *cert. denied*, 508 U.S. 906 (1993). If she successfully establishes a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to Real Foods to rebut the presumption by articulating a nondiscriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802. Once Real Foods advances a nondiscriminatory reason, McCullough must show that she has sufficient admissible evidence from which a rational fact finder could find that Real Foods' proffered nondiscriminatory reasons are either untrue or were not the real reasons for the action, and that intentional discrimination was the real reason. *Hicks,* 509 U.S. at 515; *Ryther v. KARE 11*, 108 F.3d 832, 838 n.5 (8th Cir.) (en banc), *cert. denied*, 117 S. Ct. 2510 (1997); *Ryther*,

108 F.3d at 848 n. 13 (Part I.A. of opinion of Loken, J., in which eight active judges joined); *Kneibert v. Thomson Newspapers, Michigan Inc.*, 129 F.3d 444, 452 (8th Cir. 1997); *Rothmeier v. Investment Advisors, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996).

### 1. The Prima Facie Case

As noted above, McCullough must first present evidence that will establish a prima facie case. It is uncontroverted that she did so. She satisfied all four elements: she is black, she was qualified for the job of deli manager, she was not given the job, and the job was in fact given to a minimally qualified white woman. A rebuttable presumption of discrimination is thus established.

### 2. Rebutting the Prima Facie Case

The establishment of a prima facie case creates a rebuttable presumption of discrimination. The employer may rebut this presumption by articulating one or more nondiscriminatory reasons for the employment decision. The standard for rebuttal of the prima facie case was explicated by this court in *Buchholz v. Rockwell Int'l Corp.*, 120 F.3d 146, 150 (8th Cir. 1997). There the court wrote:

> This burden is not onerous, and the explanation need not be demonstrated by a preponderance. The defendant need not persuade the court that it was actually motivated by the proffered reasons. Rather, it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against plaintiff that would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. If the defendant offers a facially nondiscrim-inatory explanation, regardless of its persuasiveness, the presumption in plaintiff's favor evaporates and it is left for the trier of fact to determine whether the plaintiff has proven that the defendant's action was motivated by discrimination.

*Id*. at 150 (citations and internal quotations omitted).

Real Foods has articulated several nondiscriminatory reasons for passing over McCullough as a candidate for deli manager. These reasons include the following: she planned to quit soon, she refused to work past 3:00 p.m., she wanted a large amount of time off, and she refused to accept the job for less than nine dollars an hour. We need not examine the evidentiary basis for these articulated reasons. We need only determine whether they constitute one or more facially nondiscriminatory reasons for the employment decision. We hold that they do.

### B. The Two-Part *Rothmeier* Test

When, as here, the prima facie case has been successfully rebutted, the presumption of discrimination "drops out of the picture." *Hicks*, 509 U.S. at 510-11; *Rothmeier*, 85 F.3d at 1334. The burden then shifts back to the plaintiff to present evidence sufficient to support two findings, as explained by this court in *Rothmeier*, 85 F.3d at 1336-37. First, the plaintiff must present evidence which creates a fact issue as to whether the employer's proffered reasons are mere pretext. *Id*. at 1336. Second, she must present evidence which creates a reasonable inference that the adverse employment decision was an act of intentional racial discrimination. *Id* at 1336-37; *see also Hicks*, 509 U.S. at 514-15.

### 1. Pretext

We first address the question of whether McCullough met her burden of creating an issue of fact as to whether Real Foods' proffered nondiscriminatory reasons are pretextual. The district court held that she met this burden, and we agree. Real Foods' proffered reasons centered on statements McCullough herself allegedly made. McCullough claims that she never made such statements, and that Real Foods' proffered reasons are predicated on bald-faced lies. These allegations of falsity, if

proved, would certainly support an inference in a reasonable jury that the proffered reasons were mere pretext rather than the actual impetus behind the decision.

## 2. Intentional Discrimination

We next address the question of whether McCullough has met her burden of creating a reasonable inference that Real Foods' proffered nondiscriminatory reasons were in reality a pretext *for discrimination.* Both this court and the Supreme Court have made clear that a plaintiff in a pretext case must establish "*both* that the reason was false, *and* that discrimination was the real reason." *Ryther*, 108 F.3d at 838 n.5 (quoting *Hicks*, 509 U.S. at 515) (emphasis in original); *see also Kneibert*, 129 F.3d at 453-54; *Rothmeier*, 85 F.3d at 1336-37. As the Supreme Court clarified in *Hicks*, "nothing in law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action [is] not believable." 509 U.S. at 514-15.

Neither the proof making out the prima facie case nor the evidence that is used to establish pretext are disqualified from use in support of an inference of intentional discrimination. *See Ryther*, 108 F.3d at 836. However, such evidence will sometimes be insufficient to support a reasonable inference that the employment decision was based upon intentional discrimination. As this court noted in *Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 801 (8th Cir. 1994), evidence discrediting an employer's nondiscriminatory explanation "is sufficient in some cases but not in all cases." This is because "[i]t is not enough . . . to *dis*believe the employer; the fact finder must *believe* the plaintiff's explanation of intentional discrimination." *Hicks*, 509 U.S. at 519 (emphasis in original). In *Ryther*, our court, sitting en banc, articulated the standard as follows:

> [U]nder this standard, while plaintiff may rely on the same evidence to prove both pretext and discrimination, that evidence must be sufficient to prove that the employer is guilty of intentional discrimination. Therefore, a trial judge may decide on a motion for summary judgment or JAML that the evidence is insufficient for a reasonable trier of fact to infer unlawful discrimination, even if plaintiff has presented some evidence of pretext.

*Ryther*, 108 F.3d at 848 n.13 (Part IA of opinion of Loken, J., joined by eight active judges); *see also Rivers-Frison v. Southeast Missouri Community Treatment Ctr.*, 133 F.3d 616, 621 (8th Cir. 1998) ("Of course, evidence that the Center's proffered reasons for termination were pretextual will only defeat summary judgment if the evidence could persuade a reasonable fact-finder that Rivers-Frison was discharged because of intentional race discrimination."); *Day v. Johnson*, 119 F.3d 650, 654 (8th Cir. 1997) (*"*[E]ven when an employee presents some circumstantial evidence of pretext, a finding of intentional discrimination is clearly erroneous if the finding lacks plausibility when the evidence is considered as a whole.") (citing *Ryther*, 108 F.3d at 848 n.13 (Part IA of opinion of Loken, J., joined by eight active judges)), *cert. denied, 118 S. Ct. 707 (1998).*

Viewing the evidence as a whole and in the light most favorable to McCullough (as we are obligated to do in the summary judgment context of this appeal), we conclude that the evidence supporting her prima facie case and her evidence of pretext are sufficient to permit a fact finder to reasonably infer intentional discrimination based on race.

Included in the whole of the evidence which supports her prima facie case is the evidence that McCullough had 15 months more hands-on experience working in the deli than did Craven, as well as the evidence that McCullough's objective educational qualifications greatly exceeded those of Craven. Although we are not convinced that a college degree is a necessary or even a nice-to-have qualification for the position of deli manager, when McCullough's education and experience are contrasted with

Craven's poor reading, writing, and math skills—as evidenced by her inability to read recipes or calculate prices—a reasonable inference arises that Meredith promoted a substantially less qualified white woman over a substantially better qualified black woman. We believe it is common business practice to pick the best qualified candidate for promotion. When that is not done, a reasonable inference arises that the employment decision was based on something other than the relative qualifications of the applicants.

Critical to our analysis in this case is the extremely subjective nature of the employer's stated promotion criteria. In the prima facie case context, we have agreed with the Tenth Circuit that "subjective criteria for promotions ‹are particularly easy for an employer to invent in an effort to sabotage a plaintiff's prima facie case and mask discrimination.'" *Lyoch v. Anheuser-Busch Cos.*, Nos. 97-1973/2061/2598, 1998 WL 121800, at *3 (8th Cir. Mar. 20, 1998) (quoting *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1510 (10th Cir.), *cert. denied*, 118 S. Ct. 626 (1997)).

> [W]e know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race.

*Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978) (cited in *Ryther*, 108 F.3d at 836).

At this stage of these proceedings, when the employer's asserted nondiscriminatory reasons are essentially checkmated by McCullough's denials that she ever made the statements the employer advances as its nondiscriminatory reasons, the failure to promote the objectively better qualified black woman raises a reasonable,

nonspeculative inference that the decision to promote the less qualified white woman was based on an impermissible consideration—in this case race, a la *Furnco*.

While federal courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers," *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995), when the whole of the evidence raises a reasonable inference that "those business judgments involve intentional discrimination," the law permits the person who claims to have been discriminated against to have her day in court. *Id.* Such is the case here.

In short, McCullough presented evidence sufficient to support a reasonable inference that Real Foods' failure to promote her to the position of deli manager was motivated by racial animus. That inference is enough to prevent summary judgment for the employer. Whether or not the trier of fact will draw such an inference after hearing all of the evidence offered by both sides at trial and judging the opposing witnesses' credibility is an entirely different question. We hold only that summary judgment was improvidently granted to the employer.

III.

For the reasons stated, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-