5 F.Supp.2d 743 (1998)
Charles K. EDWARDS, Plaintiff,
v.
WINCO MANUFACTURING CO., INC., Defendant.
No. 4:96-CV-2099 CAS.
United States District Court, E.D. Missouri, Eastern Division.
May 14, 1998.
*744 Michael M. Godsy, Donald B. Dorwart, Partner, Thompson Coburn, St. Louis, MO, for Plaintiff.
Charles K. Edwards, St. Louis, MO, pro se.
Todd J. Aschbacher, Ross A. Friedman, Susman and Schermer, St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
SHAW, District Judge.
This matter is before the Court on defendant's motion for summary judgment.
This is an action pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. Plaintiff, an African-American, contends that defendant, his former employer, exposed him to a hostile work environment of racial harassment, discriminated against him by not increasing his pay in the same increments as that of white workers, and laid him off and constructively discharged him because of his race. Plaintiff also alleges that defendant failed to provide him with reasonable accommodation for his disability, a back injury, and laid him off and failed to call him back for work despite the *745 existence of light duty work which plaintiff could perform.
Defendant moves for summary judgment, alleging that plaintiff cannot establish the elements of a prima facie case under Title VII or the ADA, and cannot rebut defendant's proffered legitimate, nondiscriminatory reasons for its actions. Plaintiff opposes the motion through his appointed counsel.

I. Standard of Review.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed. R.Civ.P. 56(c).
Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Anderson, 477 U.S. at 257, 106 S.Ct. 2505; City of Mt. Pleasant v. Associated Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir. 1988).
While caution should be used when deciding whether summary judgment is appropriate in employment discrimination cases because intent is usually a central issue, this cautionary approach "cannot and should not be construed to exempt" from summary judgment discrimination cases involving intent. Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1071 (8th Cir.1998) (internal citation omitted).
With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

II. Facts.

Plaintiff was employed by defendant WINCO Manufacturing Company ("defendant" or "WINCO") from approximately 1978 until 1996. Defendant is a wholesale manufacturer of windows at its plant in St. Louis, Missouri. Plaintiff worked as a laborer in the "final assembly" department at WINCO. In that position, plaintiff handled large windows, put arms on the windows, caulked around the window sash, drilled holes and screws in the sash, and installed weatherstrip in windows. Plaintiff's job required constant standing, frequent bending and stooping, and lifting between twenty and fifty pounds on a regular basis.
Throughout the course of plaintiff's employment with defendant, defendant permitted an atmosphere of racial hostility to permeate its plant. Plaintiff was forced to endure racial slurs and insults, threatening comments and gestures almost daily during his eighteen years of employment. These racially derogatory comments came from Brian Scott, plaintiff's "lead man" throughout his employment, and other coworkers, with the knowledge of plaintiff's foreman, Mr. Scherer. Numerous instances of racist name-calling occurred in front of Mr. Scherer and other members of defendant's management. Although plaintiff complained repeatedly to Mr. Scherer about the racial animosity he experienced on the job, none of defendant's officials took any action to address the problem, even though the employee handbook prohibits "abusive language."
White workers in the final assembly department routinely asked for and received help in lifting heavy items. When plaintiff asked for such help, he was told to "go get one of [his] brothers" to help  i.e., another African-American worker in the plant. For *746 at least a portion of his employment, plaintiff was the only African-American in the final assembly department.
In April 1994, plaintiff injured his back while working. Plaintiff's doctor restricted plaintiff to lifting fifteen to twenty pounds and stated he should not bend or twist. Plaintiff was unable to work and received workers' compensation benefits from May 1994 through early September 1995. When plaintiff returned to work in September 1995, he was restricted to "light duty" under doctor's orders, with the restriction that he not lift more than fifteen or twenty pounds and avoid bending or twisting.
Plaintiff was assigned to work in WINCO's stockroom, assisting two people regularly assigned there. Plaintiff spent most of his time putting gaskets onto window locks. In this capacity, plaintiff did not fill an existing, vacant position; rather this job was created to provide some light duty work for plaintiff. Defendant never needed the work plaintiff produced in the light duty position.
On February 16, 1996, plaintiff was still working in the stockroom and was under a doctor's restriction for lifting, bending and twisting. On that date, defendant laid plaintiff off, telling him it did not have sufficient light duty work to keep him on the payroll working full time or on a permanent basis. Although plaintiff subsequently inquired several times whether defendant had any work for him during the summer of 1996, defendant stated it did not and finally informed plaintiff that he should not return to its premises. In June 1996, plaintiff was still under doctor's orders not to lift more than ten to fifteen pounds, and to avoid much bending.
Defendant had several jobs plaintiff could have performed even with his physical limitations, including positions in the screen department, fabrication department, and as a forklift driver. Plaintiff could also have performed a stockroom job which was held by a white employee who had significantly less seniority than plaintiff. Defendant did not offer any of these positions to plaintiff. Plaintiff could also have performed the duties of his former job in final assembly, if he had been given the assistance in lifting routinely available to white employees.
A white worker replaced plaintiff in his job in the final assembly department after plaintiff was injured in 1994. Within two years, this worker was paid more than plaintiff had earned after eighteen years on the job. No one replaced plaintiff in the "light duty" stockroom position he occupied between September 1995 and February 1996.

III. Discussion.

1. Title VII Claim.

A. Prima Facie Case  Layoff and Constructive Discharge.

Defendant argues that plaintiff fails to establish a prima facie case of race discrimination under Title VII because he cannot establish that after he was allegedly constructively discharged, he was replaced by a person from outside of the protected class, citing Parton v. GTE North, Inc., 971 F.2d 150, 153 (8th Cir.1992). Plaintiff responds that he was replaced in the final assembly department by Mr. Bielong, a white man. Defendant replies that it is irrelevant who took plaintiff's old position in the final assembly department, because plaintiff had not worked there since sustaining his back injury in 1994 and was physically unable to resume that position. Defendant contends it is undisputed that no one replaced plaintiff in the relevant position, the temporary "light duty" stockroom job plaintiff filled from September 1995 until the time of his layoff.
Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. These claims are evaluated under the familiar three-part analytical framework initially set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in subsequent Supreme Court decisions, most recently St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The Eighth Circuit has recently summarized the applicable analytical framework as follows:
A Title VII plaintiff has the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *747 Only upon this prima facie showing does the burden of production shift to the employer to articulate some legitimate, nondiscriminatory reason for the employment action at issue. If the employer carries this burden of production, the burden shifts back to the employee to demonstrate that the proffered reason is mere pretext for discrimination.
Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir.1997).
Plaintiff must show the following elements in order to establish his prima facie case of race discrimination under Title VII:(i) he was a member of a protected group; (ii) he was qualified for his position and satisfied its normal requirements; (iii) he was discharged; and (iv) the discharge occurred in circumstances which allow the court to infer unlawful discrimination. See Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1108 (8th Cir.1998); Ruby v. Springfield R-12 Public Sch. Dist., 76 F.3d 909, 911 (8th Cir. 1996); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir.1995). "[T]he burden of establishing a prima facie case of disparate treatment is not onerous." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253-54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); see Rose-Maston, 133 F.3d at 1109-10.
Proof that plaintiff was replaced by a person outside the protected class is no longer an element of a prima facie case in a race discrimination action. See Rinehart v. City of Independence, Mo., 35 F.3d 1263, 1266 (8th Cir.1994), cert. denied, 514 U.S. 1096, 115 S.Ct. 1822, 131 L.Ed.2d 744 (1995); Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir.1994); Walker v. St. Anthony's Medical Center, 881 F.2d 554, 558 (8th Cir. 1989). Such evidence is probative of an intent to discriminate, but is not required in order to establish a prima facie case. Williams, 14 F.3d at 1308.
For purposes of the instant motion, therefore, the Court does not need to determine disputed factual issues concerning which position is relevant and whether plaintiff was replaced by someone outside the protected class. Because defendant has not otherwise challenged the elements of plaintiff's prima facie case, the Court assumes for purposes of this motion that plaintiff has established a prima facie case.

B. Defendant's Articulated Legitimate, Nondiscriminatory Reasons.

Defendant contends that even if plaintiff can establish a prima facie case, his race discrimination claim fails as a matter of law because it has articulated legitimate, nondiscriminatory reasons for plaintiff's layoff, i.e., that (i) plaintiff by his own admission was physically unable to return to his former position, and (ii) WINCO did not have sufficient light duty work to keep plaintiff working any longer.
At this stage of the analysis, the employer must articulate a legitimate, nondiscriminatory reason for the employment decision, but need not persuade the factfinder that it was actually motivated by the proffered reason. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Defendant has done so in this case. When the prima facie case has been successfully rebutted, the presumption of discrimination disappears. Hicks, 509 U.S. at 510-11, 113 S.Ct. 2742; Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1334 (8th Cir.1996).
The burden then shifts back to the plaintiff to present evidence sufficient to support two findings. First, the plaintiff must present evidence which creates a fact issue as to whether the employer's proffered reasons are mere pretext. Second, he must present evidence which creates a reasonable inference that the adverse employment decision was an act of intentional racial discrimination. McCullough v. Real Foods, Inc., 140 F.3d 1123, 1127 (8th Cir.1998) (applying two-part Rothmeier test to pretext issue in Title VII case).

C. Pretext.

Plaintiff asserts that defendant's articulated reason not to rehire him based on his physical limitations is pretextual because (i) he could have performed his former job in the final assembly department when he returned from medical leave in September *748 1995, or in 1996 after he was laid off, if he had received the type of assistance in lifting that white employees were routinely offered; (ii) defendant's retired foreman Matthias Scherer and final assembly foreman Brian Scott testified that several positions existed which plaintiff would have been able to perform in the screen department, fabrication department, and as a forklift driver; and (iii) plaintiff was capable of performing necessary stockroom tasks that a less senior, white employee performed after plaintiff was laid off from his temporary "light duty" stockroom job.
In response, defendant cites plaintiff's deposition testimony concerning the period between February 1996 and August 1996, when he returned to WINCO seeking work, that plaintiff did not inform WINCO or have his doctor inform WINCO that he was physically able to do his former job in final assembly. (Pl.'s Dep. at 84-87.) Defendant also submits the affidavit of its Controller and Human Resource Manager, Bill Krenn, which states in pertinent part that when plaintiff inquired about returning to work in the summer of 1996, plaintiff (i) did not produce a medical release allowing him to return to his former position in final assembly, (ii) stated he was restricted to "no heavy lifting", and (iii) produced a doctor's certificate dated June 6, 1996, which stated that plaintiff "can only lift 10-15 lbs" and "can't do frequent bending." (Krenn Aff., ¶ 7; Def.'s Ex. E-2). Plaintiff admitted that with such restrictions, he could not perform the final assembly job, which required him to lift more than twenty pounds and to bend and stoop frequently. (Pl.'s Dep. at 60-61.)
Examining the record in the light most favorable to plaintiff, and giving him the benefit of all reasonable inferences, the Court finds plaintiff has raised genuine issues of material fact concerning whether defendant's articulated reason for layoff based on plaintiff's physical limitation was pretextual. These issues include but are not limited to whether plaintiff could have performed his former position with the lifting assistance routinely available to his white coworkers, and whether other positions were available which plaintiff could have performed. Because of this finding, the Court need not examine whether genuine issues of fact exist with respect to defendant's articulated reason for terminating plaintiff's temporary "light duty" stockroom position.

D. Intentional Discrimination.

Having established that issues of fact remain with respect to pretext, plaintiff must also present evidence which creates a reasonable inference that the adverse employment decision was an act of intentional racial discrimination. McCullough, 140 F.3d at 1127. The evidence must be sufficient to prove the employer is guilty of intentional discrimination. Therefore, a trial judge may decide on a motion for summary judgment that the evidence is insufficient for a reasonable trier of fact to infer unlawful discrimination, even if plaintiff has presented some evidence of pretext. Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1073 (8th Cir.1998) (quoting Rothmeier, 85 F.3d at 1335). "The focus always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff' because of the protected factor. Rothmeier, 85 F.3d at 1337.
Plaintiff offers the following evidence of intentional discrimination. First, plaintiff refers to the atmosphere of racial hostility at defendant's plant, and his subjection for many years to racial slurs and insults, threatening comments and gestures. As previously stated, these racially derogatory comments came from plaintiff's "lead man" with the knowledge of plaintiff's foreman, and often occurred in front of the foreman and other members of defendant's management. In spite of plaintiff's repeated complaints about this conduct to the foreman, none of defendant's officials took any action to address the problem, even though the employee handbook prohibits, among other things, "abusive language."[1]
*749 Plaintiff also asserts that after he was injured in 1994, he was replaced by a white worker who, within two years, was paid more than plaintiff earned after eighteen years on the job. Further, when plaintiff was given "light duty" in the stockroom in September 1995, defendant had him perform menial work with no consideration of actual production needs  essentially "makework" which defendant never needed but continued to assign to plaintiff until it arbitrarily cut him off. Finally, defendant did not offer plaintiff any of the positions which he could have performed, including a stockroom position held by a white employee with significantly less seniority, but instead laid plaintiff off in February 1996.
The Court finds plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether defendant intentionally discriminated against him because of his race when it laid him off in 1996. Defendant's motion for summary judgment with respect to this issue should therefore be denied.

E. Pay Disparity and Racial Harassment Claims.

Defendant also moves for summary judgment on plaintiff's claims that he subjected to a racially hostile work environment and was the victim of racially-based pay disparity, arguing that plaintiff failed to file a charge of discrimination raising these claims with the Equal Employment Opportunity Commission (EEOC). Defendant contends that plaintiff's administrative charge of discrimination was limited to the issues of layoff and constructive discharge. (See Def.'s Ex. B.)
Plaintiff responds that administrative filing requirements are subject to equitable modification, and should be modified in this case. Plaintiff contends his claims of hostile environment and pay disparity are "like or reasonably related" to the administrative charge, which asserts two separate allegations of race discrimination  specifically, lay-off due to his race, and an open-ended charge, "I believe I was discriminated against because of my race, black ..." Plaintiff also asserts that he is cognitively challenged and filed the charge pro se, and did not receive adequate instruction from the EEOC investigator who assisted him.[2]
Under Title VII, plaintiffs must follow administrative procedures and exhaust administrative remedies before filing suit in federal court. Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir.1994). The purpose of Title VII's administrative filing requirement is to afford the EEOC the first opportunity to investigate discriminatory practices and allow it to fulfill its role of security voluntary compliance and advancing conciliatory efforts. Id. If a plaintiff were allowed to bring a claim outside the EEOC charge, it would "circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge ...." Id. at 223 (quoting Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985)).
Courts recognize claims as exhausted when they have been actually filed before the EEOC or when they are "like or reasonably related to the allegations of the [administrative] charge." Anderson v. Block, 807 F.2d 145, 148 (8th Cir.1986). The Eighth Circuit has held that claims are deemed to be like or reasonably related when they "could reasonably be expected to grow out of the charge of discrimination." Cobb v. Stringer, 850 F.2d 356, 359 (8th Cir.1988) (quoting Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir.1985)). Further, when a plaintiff files an EEOC charge pro se, the charge must be read liberally. Gipson v. KAS Snacktime Co., 83 F.3d 225, 229 (8th Cir.1996) (citing Williams, 21 F.3d at 223).
In Tart v. Hill Behan Lumber Co., 31 F.3d 668 (8th Cir.1994), the Eighth Circuit held that a claim of racial harassment in the workplace was not like or related to an administrative charge of wrongful termination based *750 on race. This is because a racial harassment claim focuses on the pervasiveness of discriminatory conduct, the employer's possible knowledge of that conduct and failure to take remedial action, while a discharge claim turns on the subject motivation of the decisionmakers who decided to terminate the plaintiff's employment. Id. at 672-73. The Tart decision would appear to doom plaintiff's hostile environment and pay disparity claims.
Plaintiff attempts to distinguish Tart on the basis that his charge of discrimination also included the broad statement that he was discriminated against on the basis of his race, unlike the charge in Tart. A similar argument was rejected in Rush v. McDonald's Corp., 966 F.2d 1104, 1110-12 (7th Cir.1992), where the plaintiff's administrative complaint charged racial discrimination generally, and specifically mentioned her termination. The Seventh Circuit held that even when the charge was liberally construed, it could not form the basis for racial harassment claims in a subsequent lawsuit, because the requirement of some specificity in a charge is not a "mere technicality." Id. at 1111. "Some detail, beyond a statement that `I believe I have been discriminated against because of my race, Black' is necessary to allow the [EEOC] to perform its statutory duty" of investigation and conciliation. Id. This Court agrees.
Based on the reasoning of Tart and Rush, the Court finds that plaintiff's hostile environment and pay disparity claims were not filed with the EEOC, and are not like or related to the claim raised in plaintiff's administrative charge. The Court's conclusion is bolstered by the fact that the charge asserts defendant's objectionable conduct occurred only on June 1, 1996, which is inconsistent with the theory that plaintiff was alleging a course of racial harassment occurring over many years. Plaintiff has therefore failed to exhaust administrative remedies for his hostile environment and pay disparity claims, and these claims should be dismissed.[3]

2. ADA Claim.
Defendant also moves for summary judgment on plaintiff's ADA claim, asserting plaintiff cannot establish a prima facie case of disability discrimination because he cannot establish that he is a "qualified individual with a disability", or that he was able to perform the essential functions of his job with or without reasonable accommodation. In his response, plaintiff makes no attempt to prove that he is a qualified person with a disability, and does not directly address the ADA claim. Plaintiff asserts only that his physical limitations "are not so severe ... that he could not perform his old job if he simply had the help that he saw other workers receive." (Pl.'s Mem. in Opp. at 8-9.)
The ADA prohibits discrimination by an employer "against a qualified individual with a disability because of the disability of that individual." 42 U.S.C. § 12112(a); Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1205 (8th Cir.1997). "The threshold requirement for coverage under the ADA is that the plaintiff be an `otherwise qualified individual with a disability.'" Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 677 (8th Cir.1996).
In order to establish a prima facie case of discrimination based on a disability, a plaintiff must show that (i) he is disabled within the meaning of the ADA; (ii) he was able to perform the essential functions of his job with or without reasonable accommodation; and (iii) he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. Snow, 128 F.3d at 1206; Price v. S-B Power *751 Tool, 75 F.3d 362, 365 (8th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996).
A "qualified individual with a disability" is an individual "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). The ADA defines the term "disability" as "a physical or mental impairment that substantially limits one of more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)(C); Webb v. Mercy Hospital, 102 F.3d 958, 959 (8th Cir.1996).
Under the ADA, major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Sitting, standing, lifting and reaching are also considered major life activities. Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir.1997).
To be "substantially limited" in a major life activity, a plaintiff must be rendered unable to perform a basic function that the average person in the general population can perform, or be significantly restricted in the condition, manner, or duration under which the individual can perform a particular major life activity as compared to an average person in the general population. Snow, 128 F.3d at 1206 (citing 29 C.F.R. Pt. 1630, App. § 1630.2(j)). Whether an impairment substantially limits a major life activity depends on the following factors: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or expected long-term impact. See 29 C.F.R. § 1630.2(j)(2); Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir.1996).
In this case, plaintiff alleges he is limited in two major life activities, lifting and working. (Amended Complaint, ¶¶ 21, 24.) In the record is a doctor's certificate dated June 6, 1996 stating that plaintiff cannot lift more than ten to fifteen pounds and cannot do frequent bending. (Def.'s Ex. E-2.) Plaintiff testified that after he was first injured in 1994, his doctor's certificate restricted him to lifting fifteen to twenty pounds and stated he should not bend or twist. (Pl.'s Dep. at 58-59.) Similar restrictions were in place in September 1995 when plaintiff returned to work. (Pl.'s Dep. at 61.) Plaintiff alleges in his amended complaint that his limitations are permanent.
The Eighth Circuit has held as a matter of law that although lifting is a major life activity, a general lifting restriction imposed by a physician, without more, in insufficient to constitute a disability within the meaning of the ADA. Snow, 128 F.3d at 1207 (concerning twenty-five pound lifting restriction); see, e.g., Helfter v. United Parcel Service, Inc., 115 F.3d 613, 617 (8th Cir.1997) (evidence that impairment limited work-related activities such as lifting weights over ten pounds frequently and twenty pounds occasionally did not demonstrate a triable issue regarding a substantial limitation on a major life activity); Aucutt, 85 F.3d at 1319 (twenty-five pound lifting restriction did not significantly restrict major life activities). These decisions recognize that the ADA excludes less serious impairments from the categories of disabilities. See 29 C.F.R. § 1630.2(j) App. ("Many impairments do not impact an individual's life to the degree that they constitute disabling impairments.")
In this case, plaintiff has submitted evidence of a restriction on heavy lifting which affects his ability to perform work-related activities, but has presented no evidence from which a reasonable jury could find a substantial limitation on a major life activity other than work. See Snow, 128 F.3d at 1206; Helfter, 115 F.3d at 617.
Nor has plaintiff submitted evidence to show a substantial limitation in the major life activity of work. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). A person is substantially limited in the major life activity of work if he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i); *752 Webb v. Garelick Mfg. Co., 94 F.3d 484, 487 (8th Cir.1996); Aucutt, 85 F.3d at 1319.
Plaintiff has not submitted any evidence to create a genuine issue of material fact as to whether his impairment rendered him unable to perform a class of jobs or broad range of jobs. There is no evidence addressing plaintiff's vocational training, the geographical area to which he has reasonable access, or the number and type of jobs demanding similar training from which he would be disqualified. See 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C); Helfter, 115 F.3d at 617. Plaintiff's evidence shows only that he is restricted from jobs which require heavy lifting, but does not show that this significantly restricts his ability to perform a broad range of jobs in various classes. This is insufficient to establish an issue of fact concerning whether plaintiff is disabled within the meaning of the ADA.
For these reasons, the Court will grant defendant's motion for summary judgment with respect to plaintiff's ADA claim, and does not reach defendant's second argument concerning whether plaintiff could perform the essential functions of his job with or without reasonable accommodation.

IV. Conclusion.

For the foregoing reasons, the Court concludes that defendant's motion for summary judgment should be denied with respect to plaintiff's Title VII constructive discharge claim; granted with respect to plaintiff's Title VII hostile environment and pay disparity claims; and granted with respect to plaintiff's ADA claims. Thus, the only claim remaining for trial is plaintiff's race-based constructive discharge claim in Count I.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion for summary judgment is GRANTED in part and DENIED in part as set forth in herein. [Doc. 26]
An appropriate partial judgment will accompany this memorandum and order.

PARTIAL JUDGMENT
In accordance with the memorandum and order of this date and incorporated herein,
IT IS HEREBY ORDERED ADJUDGED and DECREED that judgment is entered in favor of defendant and against plaintiff on plaintiff's claims of hostile environment racial harassment and pay disparity in violation of Title VII of the Civil Rights Act of 1964, in Count I; and plaintiff's claims under the Americans with Disabilities Act (Count II).
NOTES
[1] Although the Court determines, infra, that plaintiff may not assert a claim of hostile environment race discrimination, these background incidents may have probative value on the issue of whether defendant's termination of plaintiff was motivated by discrimination. See Tart v. Hill Behan Lumber Co., 31 F.3d 668, 673 (8th Cir.1994).
[2] In connection with plaintiff's application for social security disability benefits, an Administrative Law Judge found plaintiff to have "severe, medically determinable impairments of a learning disability [and] passive-aggressive personality disorder". (Pl.'s Ex. J at 12.)
[3] The Court declines to adopt plaintiff's suggestion that a court should consider the particular attributes or limitations of an individual pro se EEOC claimant in determining whether to apply equitable modification to an EEOC charge. (As noted above, plaintiff asserts that he suffers "communicative challenges.") This argument fails to recognize that pro se charges are liberally construed, and more fundamentally fails to acknowledge the importance of the EEOC's statutory role as investigator and conciliator and the requirement that the employer be given notice of charges. Further, plaintiff's suggestion would require courts to conduct individualized, fact-intensive evaluations of the characteristics of each pro se Title VII claimant prior to determining whether claims were exhausted, a burdensome task which would undoubtedly produce inconsistent results.