# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3818

_____

| | | |
|---|---|---|
| William O. Turner, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Honeywell Federal Manufacturing & | * | Western District of Missouri. |
| Technologies, LLC, a Delaware | * | |
| limited liability company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  May 12, 2003

Filed:  July 17, 2003

_____

Before WOLLMAN and BEAM, Circuit Judges, and NANGLE,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

---

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

William O. Turner appeals the district court's[2] grant of summary judgment in favor of Honeywell Federal Manufacturing and Technologies, LLC, (Honeywell) on his claims of racial discrimination brought under 42 U.S.C. § 1981. We affirm.

## I.

Honeywell manages a facility at which non-nuclear war reserve materials are manufactured under contract with the United States Department of Energy (DOE). Turner, a fifty-eight-year old African-American man, was hired by Honeywell as a machinist trainee in April 1967, following his honorable discharge from the United States Air Force. Over the next decade, Turner was promoted to successive production planner positions, in which he gained significant purchasing and manufacturing experience. Also during this time, Turner received a bachelor's degree in business administration, with an emphasis in labor and industrial relations, from Central Missouri State University. In 1982, Turner received a master's degree in business administration, with a concentration in business management, from Central Michigan University.

In 1976, Turner was promoted to buyer associate. He held this position until 1979, when he was upgraded to buyer. Later that year, Turner was promoted to the first-level management position of purchasing supervisor within the purchasing division. This was the last promotion Turner received while employed by Honeywell. Turner resigned his employment at Honeywell in 2000 and has since been employed as a contract specialist for the United States Marine Corps.

---

[2]The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

During his twenty-one year tenure as a purchasing supervisor/manager in Honeywell's purchasing division, Turner gained both production and non-production experience. Turner occasionally performed responsibilities of the second-level management positions in addition to satisfying the requirements of his position. Turner received numerous performance evaluations from his supervisors, the majority of which were positive and indicated exceptional performance. Beginning in 1991, however, the performance evaluations increasingly were critical of his interpersonal and leadership skills. Turner was described in evaluations as "antagonistic, defensive, arrogant, [and] vindictive and . . . [as] rely[ing] on the power of his position rather than teamwork and consensus building to accomplish his responsibilities." A 1992 Performance Appraisal recommended that Turner improve relationships with peers, as did subsequent annual evaluations.

The end of the Cold War contributed to a decline in demand for defense reserve materials in the 1990s. Consequently, DOE considered closing Honeywell's facility. To enable it to remain open, Honeywell underwent significant corporate restructuring, reducing its workforce from approximately 8,000 to 3,000 employees. These reductions and restructuring changes affected each of Honeywell's divisions.

During the course of the restructuring, four second-level management positions opened and were filled. Honeywell has an established process for posting job opportunities and hiring employees. The process provides business-needs exceptions from the general rule requiring posting. Honeywell's formal process does not govern hiring in such situations, which include "reclassification of an associate who is already doing the work of the new classification[;] lateral movement of an associate with the same classification as the job opportunity and who is within the same division as the job opportunity[;] university recruiting and external searches[; and] movement of associates to address business issues; such moves to be approved by the President or Vice President."

Four second-level managerial positions form the basis of Turner's failure-to-promote claims: (1) manager of material, filled in November 1997; (2, 3) manager of purchasing operations, filled in February 1996 and again in December 1997; and (4) manager of logistics, filled in February 1998. The positions were not posted and were filled pursuant to the business-needs exception to the posting requirement. Honeywell's then-president Karen Clegg authorized the decisions not to announce the positions and approved the hiring of all four individuals, all of whom are white males. Management explained that the exception applied because the positions composed a "major functional realignment, [the] reorganization of the procurement division that included purchasing . . . ." The record indicates that the employees who were hired had not been aware that they were being considered for the positions.

From late 1999 through spring 2000, in an effort to comply with DOE's directive to reduce Honeywell's facility by one third, management transferred many responsibilities and job functions of Turner and his staff to another department. This transfer streamlined the procurement function and addressed numerous inventory initiatives. After these responsibilities were transferred, Turner retained his management position and many of his responsibilities.

As indicated above, Turner left Honeywell in 2000 and subsequently filed this lawsuit, in which he alleged that Honeywell had discriminated against him on the basis of his race by failing to promote him on four different occasions, by the terms and conditions of his employment, and by constructively discharging him. It is from the district court's grant of summary judgment in favor of Honeywell on all claims that Turner now appeals.

## II. Standard of Review

We review a district court's grant of summary judgment de novo, reading the record in a light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences drawn from the record. Hannoon v. Fawn Eng'g Corp., 324 F.3d 1041, 1045-46 (8th Cir. 2003); Gentry v. Georgia-Pac. Corp., 250 F.3d 646, 649 (8th Cir. 2001) (citations omitted). Summary judgment is granted appropriately in cases in which "one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Gentry, 250 F.3d at 649-50 (citing Whitley v. Peer Review Sys., Inc. 221 F.3d 1053, 1055 (8th Cir. 2000) (citation omitted)). "We must . . . keep in mind, [however,] as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases." Chock v. Northwest Airlines, Inc., 113 F.3d 861, 862 (8th Cir. 1997) (citing Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994)).

## III. Argument

### A.

Because Turner did not present direct evidence of discrimination, his discrimination claims are analyzed under the burden-shifting framework adopted in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 801-04 (1973). Hannoon, 324 F.3d at 1046; see also Johnson v. Arkansas State Police, 10 F.3d 547, 551 (8th Cir. 1993) (citing McDonnell Douglas, 411 U.S. at 802). Under this framework, a plaintiff must "demonstrate a prima facie case of discrimination by showing that []he is a member of a protected class, that []he sought and was denied a promotion for which []he was qualified, and that the promotion was given to another person who is not a member of the protected class." Lidge-Myrtil v. Deere & Co., 49 F.3d 1308,

1310 (8th Cir. 1995). "The threshold of proof necessary to make a prima facie case is minimal . . . ." Johnson, 10 F.3d at 551 (citations omitted).

The district court held that Turner failed to establish a prima facie case of racial discrimination under § 1981 because he failed to show both that he was qualified for the positions to which he was denied promotion and that "similarly situated employee[s] outside the protected group [were] promoted instead." Dotson v. Delta Consol. Indus., Inc., 251 F.3d 780, 781 (8th Cir. 2001) (citing Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1109 (8th Cir. 1998)). Turner contends that he was qualified for all four positions. Although none of the positions at issue were posted, nor were their specific qualifications enumerated, the district court determined, based on evidence presented by Honeywell, that teamwork and experience were required qualifications of the challenged positions and that experience with a collective bargaining agreement was an additional requirement of one of the positions. The district court concluded that because Honeywell employees testified that Turner lacked strong teamwork abilities and experience with bargaining unit employees and a collective bargaining agreement, Turner could not establish that he was qualified for the positions.

We agree with Turner that the district court applied a higher threshold of proof than is required by our cases and that it thus erred in finding that Turner had not established a prima facie case of racial discrimination. As will be seen, however, we agree with the district court that Turner failed to establish a question of fact concerning whether Honeywell's proffered non-discriminatory reason for failing to promote him was pretextual.

To prove that he was qualified for the positions for the purpose of establishing a prima facie case of racial discrimination, Turner need not have shown, as the district court required, that he was more than minimally qualified for the positions. As we stated in McCullough v. Real Foods, Inc., 140 F.3d 1123, 1126 (8th Cir. 1998),

"[plaintiff] must demonstrate . . . that []he met the minimum qualifications . . . for the positions . . . ."  See also Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 944 (8th Cir. 1994) (stating that the district court misstated the second element as "adequate job performance" when it "should have been phrased in terms of whether plaintiff was "qualified" for his position").  Furthermore, the four positions at issue—manager of purchasing operations, twice, and manager of logistics and manager of materiel—were not posted and were filled without a formal applications process.  In cases in which the positions in question are not posted, a plaintiff "has a lighter burden when attempting to make a prima facie case of failure to promote than in a situation involving objective promotions criteria."  Lyoch v. Anheuser-Busch Cos., Inc., 139 F.3d 612, 615 (8th Cir. 1998).  "[A] plaintiff alleging a prima facie case of failure to promote should not bear the same burden when the criteria are subjective and the process 'vague and secretive' as when the case involves 'objective hiring criteria applied to all applicants.'"  Id. (citing Thomas v. Denny's, Inc., 111 F.3d 1506, 1510 (10th Cir. 1997) (citations omitted)).

Limited descriptions of the duties, responsibilities, experience, knowledge, and skill required for the positions are contained in "Salaried Classification Descriptions." Turner's qualifications satisfy the objective experience and knowledge/skill requirements enumerated in these descriptions.[3]  Notably, these descriptions do not

---

[3]Manager, Purchasing Operations, requires that a successful applicant have as experience "[s]everal years in the purchasing field including supervisory experience," in addition to a "[b]achelor's degree or an equivalent combination of formal training and experience in a technical, professional, or administrative field."

Manager, Materiel, requires that a successful applicant have "[m]ore than ten years in production management, purchasing, or related activities[,]" in addition to a "[b]achelor degree or an equivalent combination of formal training and experience in a technical, professional, or administrative field."

Manager, Logistics, requires that a successful applicant have "[s]everal years in the purchasing field including supervisory experience[,]" in addition to a "[b]achelor degree or an equivalent combination of formal training and experience

include the specific qualifications and selection criteria enumerated by Honeywell management in testimony, such as teamwork and interpersonal skills. Turner has extensive purchasing and production experience, including supervisory experience. As noted above, he also has both bachelor's and master's degrees in business administration. While employed by Honeywell, Turner demonstrated that he performed his job responsibilities well and had education and experience that rendered him "qualified" for the positions. Accordingly, we conclude that Turner was qualified for the positions to which he was not promoted and that he thus satisfied the second element of his prima facie case.

Turner also contends that the district court erred by determining that he failed to establish that Honeywell "promoted a person of similar qualification who was not a member of the protected group." Turner v. Honeywell Fed. Mfg. & Techs., LLC, No. 00-0878-CV-W-REL, slip op. at 130 (W.D. Mo. Oct. 24, 2002). The court stated, "The Eighth Circuit has routinely held that the fourth element of a prima facie case for a failure-to-promote race discrimination case requires the plaintiff to establish that he and the successful candidate had similar qualifications." Id. at 132 (citing Dotson 251 F.3d at 781 (citing Rose-Maston, 133 F.3d at 1109)). The cases upon which the district court relied do not support its articulation of the fourth element of the prima facie case. Dotson requires that the plaintiff show only that a "similarly situated employee" was promoted. Although Rose-Maston uses the language "similarly qualified," the cases cited by the Rose-Maston court as authority do not adopt that phrase, nor do they intimate that meaning. Rose-Maston, 133 F.3d at 1109 (citing Shannon v. Ford Motor Co., 72 F.3d 678, 682 (8th Cir. 1996) (stating that plaintiff must show that "similarly situated employees, not part of the protected group, were promoted instead") (emphasis added); Lidge-Myrtil, 49 F.3d at 1310 (stating plaintiff "must demonstrate . . . that the promotion was given to another person who is not a member of the protected class") (emphasis added)). See also Ross v. Kansas City

in a technical, professional, or administrative field."

<u>Power & Light Co.</u>, 293 F.3d 1041, 1046 (8th Cir. 2002); <u>cf.</u> <u>McCullough</u>, 140 F.3d at 1126 (stating that plaintiff must demonstrate that "her employer promoted a person of similar qualifications who was not a member of the protected group") (citing <u>Marzec v. Marsh</u>, 990 F.2d 393, 395-96 (8th Cir. 1993)).

Notwithstanding the variations in the phrasing our cases have employed in discussing the fourth prong of a prima facie case, the test is less rigid than that adopted by the district court in this case and focuses most significantly on the plaintiff's demonstration that the promotion was given to an individual who is not a member of the protected class. <u>Shannon</u>, 72 F.3d at 682; <u>Lidge-Myrtil</u>, 49 F.3d at 1310. "The plaintiff need not prove [his] relative qualifications to meet [his] prima facie burden. To require such proof of relative qualifications at the prima facie stage of a case would undermine the <u>McDonnell Douglas</u> . . . framework and 'collapse [its] three step analysis into a single initial step at which all issues would be resolved.'" <u>Hawkins v. Anheuser-Busch Inc.</u>, 697 F.2d 810, 813-14 (8th Cir. 1983) (citations omitted). It is undisputed that Honeywell hired four white men to fill the positions at issue. Turner had at least the same level of education and work experience in the field, if not more, than did those hired by Honeywell. The primary differences identified by the court between Turner's qualifications and those of the men hired to fill the positions at issue, in determining that Turner was not "similarly qualified," were that Turner had a history of poor teamwork skills and lacked experience managing associates under a union contract. Neither of the latter was enumerated as a qualification for the positions at issue. Accordingly, because Turner showed that he was similarly situated to the individuals who were promoted by Honeywell and that the promotions were given to employees who were not members of the protected class, we conclude that Turner satisfied the fourth element of the prima facie case of racial discrimination for failure to promote and thus established a prima facie case of discrimination.

B.

Turner next contends that the district court erred by determining that Honeywell articulated a legitimate, non-discriminatory reason for failing to promote Turner sufficient to overcome any presumption of discrimination that would have arisen had Turner established a prima facie case of racial discrimination. Turner also challenges the court's determination that he did not present evidence creating an issue of fact concerning whether Honeywell's reasons were pretextual. Turner asserts that the district court misapplied the law at this stage of the McDonnell Douglas analysis by using the "defunct pretext-plus analysis," and by failing to consider the evidence used at the prima facie stage to analyze whether Honeywell's reasons for failing to promote Turner were pretextual. See Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

If a plaintiff establishes a prima facie case of discrimination, "a rebuttable presumption of discrimination arises . . . ." McCullough, 140 F.3d at 1127 (citations omitted). The "burden of production [thus] shifts to [defendant], who must rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason" for its action. Ross, 293 F.3d at 1046 (citing Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 254 (1981)). If defendant satisfies its burden, [plaintiff] "may win by proffering evidence that [defendant's] reason was a pretext for intentional discrimination." Id.; see also McCullough, 140 F.3d at 1126-27.

We conclude that Honeywell was "able to satisfy the second level of . . . inquiry and rebut [any] presumption of discrimination by articulating a legitimate, non-discriminatory reason for failing to promote" Turner. Lidge-Myrtil, 49 F.3d at 1310 (citations omitted). Honeywell underwent a period of significant down-sizing and corporate restructuring during the 1990s. During this restructuring process, four

-10-

second-level management positions opened. Because of the ongoing transitions within the corporation, Honeywell sought to hire individuals to fill the positions who were uniquely qualified to satisfy the demands of the positions and who had proven records of managing both managers and employees. The record indicates that the four individuals hired to fill the positions at issue had extensive experience in the specific fields and were skilled listeners and leaders. Turner, unlike the individuals hired, had a history of unfavorable reviews concerning his teamwork and interpersonal abilities. Performance appraisals dating from 1992 until 1999 note Turner's difficulties in communicating with colleagues effectively, with tact and diplomacy, and his limited teamwork abilities.

Because Honeywell rebutted the presumption of discrimination, the burden shifted back to Turner, requiring that he present evidence of discrimination sufficient to create a question for the jury. Chock, 113 F.3d at 863 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)). We agree that Turner failed to do so. Turner presented no evidence showing that Honeywell's decisions not to post the positions and not to promote Turner were discriminatory. Turner was by no means unique in not having received a promotion. Several of his white colleagues and peers who were similarly qualified were neither promoted nor considered for the positions. The record thus supports Honeywell's contention that during this time of corporate transition Turner was not the victim of discriminatory conduct. His job was not threatened; indeed, his income increased significantly throughout his tenure at Honeywell. In light of Turner's failure to produce any material evidence affirmatively demonstrating that Honeywell's justification was false and that it unlawfully discriminated against him on the basis of his race, the district court correctly granted summary judgment in favor of Honeywell. See Reeves, 530 U.S. at 148 ("[E]mployer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the

-11-

employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred.").

## C.

Turner contends that the district court erred by granting summary judgment in favor of Honeywell on his constructive discharge claim. An employee has been constructively discharged"when an employer, through action or inaction, renders an employee's working conditions so intolerable that the employee essentially is forced to terminate [his] employment." Hunt v. Missouri, Dep't of Corrections, 297 F.3d 735, 744 (8th Cir. 2002) (citing Henderson v. Simmons Foods, Inc., 217 F.3d 612, 617 (8th Cir. 2000)). The employer's conduct

> must have been severe or pervasive enough to create an objectively hostile or abusive work environment, and additionally the plaintiff must subjectively perceive the environment to be abusive. A plaintiff may satisfy this intent requirement by showing the intolerable situation created by the employer was such that the employer could reasonably foresee that the employee would quit.

Tadlock v. Powell, 291 F.3d 541, 547 (8th Cir. 2002) (citations omitted) (affirming district court finding of constructive discharge where a long-time supervisory employee was transferred to a field office following a meeting in which he had been given a list of questionable concerns and then was forced to remain in the field office for nine months before being notified that he could not return to his former position). "If an employee quits because []he reasonably believes there is no chance of fair treatment, there has been a constructive discharge. An employee must, however, grant [his] employer a reasonable opportunity to correct the intolerable condition before []he terminates [his] employment." Henderson, 217 F.3d at 617 (citations omitted).

Turner alleges that Honeywell's failure to promote him and the April 2000 transfer of duties constituted adverse employment actions that rendered his employment intolerable, compelling him to quit. We disagree. Turner did not present evidence sufficient for a reasonable jury to conclude that Honeywell rendered his working conditions so intolerable as to cause his resignation and that Honeywell intended or reasonably foresaw this result. Furthermore, Turner's job title, management level, salary, and benefits were not adversely affected by changes in his job responsibilities. Because the evidence supports its finding that a reasonable, objective person would not have felt compelled to resign, the district court did not err in granting summary judgment in favor of Honeywell on this issue.

We find Turner's remaining argument to be without merit.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.