# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1341

_____

| | | |
|---|---|---|
| Ronald Brooks, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Ameren UE, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 11, 2003

Filed: October 8, 2003

_____

Before WOLLMAN, BOWMAN, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Ronald Brooks appeals the district court's[1] grant of summary judgment on Brooks's claims of race discrimination against his employer, Ameren UE (Ameren). The district court concluded that Brooks failed to advance sufficient evidence that Ameren's proffered reasons for not promoting Brooks were pretextual. We affirm.

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

Brooks began working for Ameren, a utility company, in 1984. He became a journey line worker in Ameren's electric department in 1988 and was eventually promoted to chief line worker in 2000. All of the line workers report to construction supervisors, who direct the work crews and communicate with customers.

Brooks, who is black, sued Ameren under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010, *et seq.*, after Ameren selected white employees over Brooks for both permanent and temporary promotions into the construction supervisor position. Brooks applied for the permanent promotions in 1999 and 2001. In each instance, Ameren conducted interviews using a committee consisting of the district manager, district superintendent, and personnel supervisor. The committee asked each applicant the same series of written questions and scored each applicant's responses. After scoring the interviews, the committee discussed the work performance of the applicants before awarding the promotion.

According to the committee members, they did not promote Brooks to the permanent positions because of his lower interview scores and their concerns about his "people skills" and leadership ability. Similarly, the district superintendent indicated in his deposition that he had not offered Brooks a temporary upgrade because of his concerns about Brooks's ability to work under pressure and to make quick decisions.

For summary judgment purposes, Ameren stipulated that Brooks could establish a *prima facie* case of race discrimination, but argued that it promoted other applicants for legitimate nondiscriminatory reasons, including Brooks's lower interview scores and the aforementioned concerns about Brooks's leadership and decision-making abilities. In light of Ameren's proffering of legitimate, nondiscriminatory reasons for its decisions, the pertinent question on summary judgment was whether, viewing the record in the light most favorable to Brooks,

there was sufficient evidence from which a jury could conclude that Ameren's proffered reasons were a pretext masking intentional discrimination. See Turner v. Honeywell Federal Mfg. & Technologies, LLC, 336 F.3d 716, 719-20, 723 (8th Cir. 2003); Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996). We review the district court's answer to this question *de novo*. Turner, 336 F.3d at 719.

For reversal, Brooks suggests that his answers to selected interview questions were just as good as the answers given by the higher-scoring candidates. He faults the "subjective" nature of the scoring and argues that certain explanations given by the interviewers are inconsistent or not reproduced in their contemporaneously made interview notes. Brooks also points out that his particular department has not had a black construction supervisor for at least twenty years, and he alleges that work rules and discipline were applied solely or more harshly to him.

We find Brooks's arguments unavailing. Although subjective promotion procedures are susceptible of discriminatory abuse and require close scrutiny, Bell v. Bolger, 708 F.2d 1312, 1319-20 (8th Cir. 1983), subjectivity alone does not render an employment decision infirm. Here, the interviewers were able to explain, in clear and reasonably specific terms, their reasons for scoring Brooks lower than the promoted candidates. See Texas Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 258 (1981). Brooks's opinion that he should have received higher scores is "simply irrelevant, [as] it is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." Kelley v. Goodyear Tire and Rubber Co., 220 F.3d 1174, 1177 (10th Cir. 2000) (citations and internal quotation marks omitted).

Brooks has not advanced other evidence that would support a finding of pretext. Brooks was not obviously more qualified than the selected candidates, see Kim v. Nash Finch Co., 123 F.3d 1046, 1052 (8th Cir. 1997), nor are Ameren's

proffered reasons for refusing to promote Brooks patently inconsistent with Brooks's work record or Ameren's prior conduct. See Widoe v. Dist. # 111 Otoe County Sch., 147 F.3d 726, 730 (8th Cir. 1998) (finding school board's suggestion that it did not hire teacher because of her outdated references suspect because she had already been teaching at the school and decisionmakers themselves had written her letters of recommendation). It is undisputed that Brooks had had a number of accidents and safety mishaps that the promoted applicants did not have, and his contentions of disparate discipline are not supported by the record.[2] In addition, the inconsistencies Brooks points to in the explanations given by the interviewers are minor or irrelevant, and they do not demonstrate that the interviewers were untruthful in their assessments of Brooks's interview performance and personal abilities. No rule requires that interview notes be the complete account of a manager's interview impressions,[3] nor is there any requirement that a manager remember the details of interviews with pinpoint accuracy. Cf. Kelley, 220 F.3d at 1178.

Finally, the lack of a black construction supervisor in Brooks's department, even when considered with the Ameren affirmative action policy recognizing the underutilization of minorities, does not demonstrate pretext. The Ameren affirmative action policy is not evidence that the company lies about or intentionally

---

[2]For example, Brooks suggests that he was disciplined for socializing with another employee during work hours while white employees are not disciplined for the same conduct. The evidence indicates otherwise. The very person Brooks was disciplined for speaking to was disciplined herself for socializing on a different occasion.

[3]On this point, we reject Brooks's suggestion that Federal Rule of Evidence 1002 somehow renders inadmissible the interviewers's subsequent elaboration on their contemporaneously made interview notes. Rule 1002 simply expresses the law's preference for using the original of a document to prove the contents of that document. Here, there is no indication that Ameren would prove the contents of the notes using anything but the notes themselves.

discriminates in employment decisions, and Brooks did not present statistical evidence probative of a discriminatory promotional pattern at Ameren.

The judgment is affirmed.

_____