# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3077

_____

Stacy Cox

*Plaintiff - Appellant*

v.

First National Bank, doing business as First National Bank of Omaha

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 14, 2015
Filed: July 6, 2015

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Stacy A. Cox sued First National Bank of Omaha for gender discrimination under Title VII of the Civil Rights Act of 1964, after the Bank promoted a male employee over Cox to Senior Vice President of Operations. The district court[1]

_____

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

granted summary judgment to First National. Cox appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

In spring 2011, First National sought a successor for David S. Downing, the retiring Senior Vice President of Operations. The position had no written job description, but Operations includes at least four areas: loans, liabilities, payments, and risk. First National did not have a formal promotions policy.

First National primarily considered two candidates: Cox and Jon P. Doyle, a male. Cox began at First National in 2008 as Vice President of Loan Operations, reporting directly to Downing. With her previous experience at another bank, she had 21 years of loans experience. She also had experience in liabilities, payments, and risk. In 2010, she led the Operations team planning for a series of bank mergers (completed after she left First National). Cox, an M.B.A., had a graduate degree in banking. Her 2011 performance appraisal rated her "Meets Expectations," noting her strong working relationships with business partners. She also received "Meets Expectations" in 2009.

Doyle began at First National in 2000, originally in the wealth management group. In 2006, he became Vice President of Payment Operations, reporting directly to Downing. Doyle worked in banking for over ten years before joining First National, including participating in trust mergers. He had experience in payments, liabilities, and risk, but not loans. He received "Meets Expectations" in 2011 and "Exceeds Expectations" in 2009.

After deciding to retire, Downing, on his own initiative, created a matrix rating potential candidates on the qualities he determined a senior leader should have. Cox and Doyle were among the highest-rated candidates on the matrix. (The best-rated

candidate, a female, opted out of consideration.) Cox and Doyle rated equally in categories "Domain Knowledge," "Maturity," and "Risk." Cox rated higher in one category: "People Management Skills." Doyle rated higher in three categories: "Leadership," "Peer Respect," and "Managerial Acceptance."

First National President Daniel K. O'Neill made the promotion decision. O'Neill did not interview Cox or Doyle, but had one discussion with each before Downing announced retirement. O'Neill did not review their resumes or performance appraisals. He did study Downing's matrix. At the time, only one of 15 executive officers at First National was female, as was one member of the 12-member Board of Directors and one of 18 employees reporting directly to O'Neill. Relying on the matrix and tenure, O'Neill promoted Doyle. Although Cox remained in the same position, O'Neill gave her a raise and increased responsibility.

After resigning in fall 2011, Cox sued First National for gender discrimination. The district court granted summary judgment to First National.

II.

This court reviews de novo a grant of summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. A court "must view the evidence in the light most favorable to the opposing party" and draw all reasonable inferences in favor of that party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866, 1868 (2014) (per curiam) (internal quotation marks omitted).

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." **42 U.S.C. § 2000e-2(a)(1)**.

Discrimination occurs when sex "was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* **§ 2000e-2(m)**.

Cox offers no direct evidence, so her claim is analyzed under the *McDonnell Douglas* three-step framework. *See* **Torgerson**, 643 F.3d at 1044. The employee must first establish a prima facie case of discrimination, demonstrating: "(1) she is in a protected class; (2) she was qualified for an open position; (3) she was denied that position; and (4) the employer filled the position with a person not in the same protected class." *Id.* at 1046 (brackets omitted). If the employee establishes a prima facie case, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason" for not promoting her. *Id.* The employee then has the burden "to produce evidence sufficient to create a genuine issue of material fact regarding whether [the employer's] proffered nondiscriminatory justifications are mere pretext for intentional discrimination." *Id.* The employee may demonstrate pretext either by showing "that the employer's explanation is unworthy of credence because it has no basis in fact" or "by persuading the court that a prohibited reason more likely motivated the employer." *Id.* at 1047 (ellipsis and brackets omitted).

First National does not dispute that Cox has a prima facie case of discrimination. Cox does not dispute that First National offers a nondiscriminatory explanation for the promotion: Doyle had a longer tenure at First National and was rated higher on Downing's matrix. The issue is whether Cox offers sufficient evidence of pretext.

According to Cox, five categories of evidence establish pretext: (1) her qualifications compared to Doyle's; (2) O'Neill's improper reliance on tenure; (3) the subjective nature of the hiring process; (4) O'Neill's limited investigation of the

-4-

candidates; and (5) First National's male-dominated culture.[2] The first four aim to show First National's stated reasons have no basis in fact, while the last suggests a discriminatory motive.

First, Cox asserts that her qualifications are objectively superior to Doyle's. It is "common business practice to pick the best qualified candidate for promotion. When that is not done, a reasonable inference arises that the employment decision was based on something other than the relative qualifications of the applicants." *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1129 (8th Cir. 1998). "To support a finding of pretext, the applicant must show that [the employer] hired a *less* qualified applicant." *Torgerson*, 643 F.3d at 1049 (brackets omitted). "If the comparison reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate, then no inference of discrimination would arise." *Id.* (ellipsis omitted). "Although an employer's selection of a less qualified candidate can support a finding that the employer's nondiscriminatory reason for the hiring was pretextual, it is the employer's role to identify those strengths that constitute the best qualified applicant." *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 916 (8th Cir. 2007).

Cox fails to demonstrate that Doyle is "less qualified" to be Senior Vice President of Operations. Cox compares her multiple graduate degrees and loans experience with Doyle's lack of graduate degrees and inexperience with loans. But at the time of the promotion, Doyle had been one of the vice presidents of operations—a position with significant operations responsibility, the same level as Cox—for longer than Cox. He had worked at First National three times longer than

_____

[2]Cox also alleges several comments questioning Doyle's selection, made by nondecisionmakers after the promotion. In her reply brief, for the first time, she argues these are relevant to pretext. She points to no error in the district court's analysis. This argument is waived. *See Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived.").

Cox. While Cox received good performance appraisals and good ratings on Downing's matrix, Doyle had equal (or better) performance appraisals and better ratings on the matrix. O'Neill permissibly identified tenure and matrix ratings, rather than education and loans experience, as "strengths that constitute the best qualified applicant." *See id. See also **Torgerson***, 643 F.3d at 1049 (noting "'relatively similar qualifications' do not create a material issue of fact as to pretext").

Second, Cox claims O'Neill improperly used tenure as a proxy for good work relationships. O'Neill testified he felt Doyle's tenure at First National (about ten years, compared to Cox's three) meant Doyle had broader experience and more relationships with people at the Bank, including outside of Omaha. Cox tries to undermine O'Neill's explanation with factual inaccuracy in his testimony: O'Neill stated he thought Doyle's outside-Omaha relationships would be useful for mergers that were starting; Cox points out the mergers had been underway for a year. The "inconsistencies [Cox] points to . . . are minor or irrelevant" and do not indicate O'Neill's explanation has no basis in fact. *See **Brooks v. Ameren UE***, 345 F.3d 986, 988-89 (8th Cir. 2003). O'Neill highlighted Cox's and Doyle's respective tenures and explained why he valued Doyle's, using the merger project as one example. Cox emphasizes her own good relationships, including the notation on her performance appraisal and her work as a leader on the already-begun mergers. But Cox's good relationships do not trump Doyle's, or make O'Neill's reliance on tenure "unworthy of credence." *See **Torgerson***, 643 F.3d at 1047, 1049 ("Although an employee does possess the experience and some of the other qualities essential for success in the position, this does not suffice to raise an inference that the employer's stated rationale for giving the position to another is pretextual." (brackets and internal quotation marks omitted)).

Third, Cox stresses the subjective nature of the hiring process, noting Downing created the matrix without any guidance from First National. She highlights that the matrix categories—especially the ones where Doyle ranked higher, "Leadership,"

"Peer Respect," and "Managerial Acceptance"—rate subjective qualities. An employer could invent subjective criteria for promotions in order to mask discrimination. *See McCullough*, 140 F.3d at 1129. But "subjectivity alone does not render an employment decision infirm." *Brooks*, 345 F.3d at 988. Though First National did not provide written criteria for the position, the matrix categories are not an attempt by O'Neill to invent reasons in order to mask discrimination. *Downing* created the matrix. Cox does not argue Downing was motivated by sex discrimination. *See Torgerson*, 643 F.3d at 1050 ("The presence of subjectivity in employee evaluations is *itself* not a grounds for challenging those evaluations as discriminatory. . . . [The applicants] must produce sufficient evidence from which a reasonable factfinder could infer discrimination." (brackets omitted)).

Fourth, Cox argues that O'Neill's failure to investigate the candidates raises the inference that his decision was based on sex. She contends that, unlike a reasonable employer, he did not interview them; did not review their resumes or performance appraisals; and did not seek input from employees familiar with their work. However, she cites no authority that these steps are required to inform a promotion decision. O'Neill had other knowledge of the candidates: He knew both were competent vice presidents of operations, which he believed demonstrated sufficient operations experience to be Senior Vice President. He relied on the matrix created by their direct supervisor, who chose the categories based on his experience as the position incumbent. O'Neill knew their respective tenures. He had one discussion with each candidate. He was also able to articulate his reasoning. *See id.* (noting interviewers "were able to explain, in clear and reasonably specific terms, their reasons for scoring [the plaintiffs] lower than the [promoted] candidates").

Fifth, Cox draws attention to First National's male-dominated culture. In spring 2011, only one of 15 executive officers, and one of 12 members of the Board of Directors, were female. Cox does not argue that this, alone, establishes discriminatory intent. However, as she notes, "[e]ven where quantitative evidence

does not alone demonstrate discrimination to some judicially created standard of statistical conclusiveness, it is still relevant in conjunction with all other evidence in determining intentional discrimination." *See **MacDissi v. Valmont Indus., Inc.**,* 856 F.2d 1054, 1058 n.3 (8th Cir. 1988).

Taken as a whole, Cox does not raise a genuine dispute of material fact that O'Neill's reasons for promoting Doyle are "unworthy of credence." Only First National's lack of female executives supports pretext; neither Cox's qualifications nor O'Neill's reliance on tenure or the matrix support a reasonable inference that the failure to promote Cox was due to sex discrimination. The district court did not err in granting summary judgment to First National.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____