# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-2789

_____

Tyron D. Farver

*Plaintiff - Appellant*

v.

Ryan D. McCarthy, Acting Secretary, Department of the Army

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff Division

_____

Submitted: April 16, 2019
Filed: July 31, 2019

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Tyron Farver challenges the decision of Pine Bluff Arsenal ("PBA"), an installation of the Department of the Army, not to hire him for either a temporary or a permanent position as a Chemical Equipment Repairer. Farver claims PBA violated

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. The district court[1] granted the defendant's motion for summary judgment. We affirm.

## I. Background

Farver, an African American, was employed at PBA as an Industrial Worker, but was loaned out to the Motor Powered and Systems Division ("motor pool") for his welding skills for approximately six months in 2009. There was not enough welding work to keep Farver busy welding each day at the motor pool. During times when work was slow, Farver sought training on chemical equipment such as the M17A3 ("M17") decontamination unit. With the assistance of his coworker Robert Lee, Farver became proficient in the fabrication of M17s. Farver was never assigned to work on these units during his time at the motor pool.

Farver applied for a job as a Chemical Equipment Repairer at PBA on two occasions in 2009. First, Farver applied for a one-year term position with a possible year-to-year extension. There were multiple term positions open when Farver submitted his resume to his second-line supervisor, James Reed. Reed was uncertain of the exact number, but testified he may have received as many as 50 to 100 resumes for the one-year term positions. Reed did not select Farver. Later that year, Farver applied online for a permanent position. Reed again passed over Farver for the position.

Reed selected Chad Adams, Brandon Wilson, JC Warren, and Anthony Foots for the term positions. Reed maintained the chosen candidates "had more the type of mechanical experience" he was looking for. This included "skills with engines, with hydraulics, pneumatics, troubleshooting, diagnostics, and those types of skills."

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

Adams's mechanical experience included time spent as an HVAC technician, experience reading blueprints and diagrams, and installing components. Warren had experience with engines and hydraulics because he had previously owned and operated a trucking and construction business. Wilson had experience in chemical equipment repair and was familiar with M17 decontamination units because of his time as a work leader at PBA. Farver's resume highlighted his experience with welding and chemical equipment repair. However, welding experience was not required in order to be eligible for the position, and his work with chemical equipment had not been assigned by PBA.

Regarding the permanent position, Reed selected seven individuals based on scores they received on a matrix he created to assess resumes. Despite the fact Farver's resume received a high rank from a resume-analyzing computer software program used by the Army, when Reed reviewed the materials himself he believed Farver's relevant experience had been inflated.[2] In his own matrix, Reed did not credit Farver's unassigned work experiences, work he had not observed Farver doing, and skills he doubted Farver could have acquired based on the available equipment in Farver's assigned area. In addition, Reed's matrix did not offer significant points for welding, Farver's primary assigned task in the motor pool. After Reed completed his own calculations, Farver received the lowest score of the considered applicants. Reed explained he did not hire Farver because "[Farver's] resume did not indicate that he could perform the functions that were required to do that job in the position description as well as the people [Reed] selected."

Farver sued the Secretary of the Army ("Secretary") on the basis of race discrimination. In response to the Secretary's motion for summary judgment, Farver

---

[2]The resumes were run through a program called Resumix. Resumix did an automated word search of the applicants' resumes and scored them based on knowledge, skills, and abilities found in the position description. Resumix scored Farver's resume fourth highest of the applicants.

argued genuine issues of material fact existed as to whether Reed's failure to select him for the term and permanent positions was based on his race since he was more qualified than some of the white individuals selected. The district court granted the Secretary's motion and Farver appealed.

## II. Analysis

Grants of summary judgment are reviewed de novo. *Cox v. First Nat'l Bank*, 792 F.3d 936, 938 (8th Cir. 2015). Summary judgment should be granted when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine issue of material fact if there is enough evidence " that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of demonstrating an absence of a genuine dispute of material fact is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies the burden, the nonmoving party must present specific evidence, beyond "mere denials or allegations [that] . . . raise a genuine issue for trial." *Wingate v. Gage Cty. Sch. Dist.*, 528 F.3d 1074, 1079 (8th Cir. 2008); *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (discussing the nonmovant's burden of showing more than a "metaphysical doubt").

"[T]o survive a motion for summary judgment on a discrimination claim, a plaintiff must present admissible evidence directly indicating unlawful discrimination, or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas* . . . ." *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1115-16 (8th Cir. 2018) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Farver does not supply any evidence of direct discrimination, so the question is one of indirect evidence. To establish an inference of discrimination, there are three steps: (1) the plaintiff must establish the prima facie case for race discrimination; (2) the burden of production then shifts to the employer

to show a legitimate, nondiscriminatory reason for its decision; and, if the employer produces such evidence, (3) the burden of production shifts back to the plaintiff to show the proffered reason was mere pretext for intentional discrimination. *See McDonnell Douglas*, 411 U.S. at 802–05; *see also Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1125–26 (8th Cir. 2017).

In the failure-to-hire context, a plaintiff may establish a prima facie case of discrimination by showing he is a member of a protected group; he applied for an available position; he was qualified for the role; he was not hired; and similarly situated individuals, not part of the protected group, were promoted instead. *See Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011). Farver's ability to establish the prima facie case for either position is not disputed, therefore we start our analysis with the remainder of the test.[3]

Reed maintained his decision was based on the skills and experiences of the applicants, not race. Reed explained the candidates he chose "had more the type of mechanical experience" for which he was looking, including skills with engines, hydraulics, pneumatics, troubleshooting, and diagnostics. Prioritizing a certain set of skills over others is a legitimate, nondiscriminatory reason for a hiring decision.

Thus, the burden of production shifts back to Farver to present evidence the provided reason is pretextual. *McDonnell Douglas*, 411 U.S. at 806. There are two primary ways to show pretext in this area. A plaintiff may present evidence the proffered reason has "no basis in fact" or "a [prohibited] reason [is] more likely." *Torgerson*, 643 F.3d at 1048 (first alteration in the original) (quoting *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006)). To show a prohibited reason

---

[3]Although Farver's ability to establish a prima facie case for the term position is not disputed, we note Anthony Foots, one of the individuals hired, is African American.

is more likely because he or she was more qualified than selected candidates, a rejected candidate must present evidence the other candidates were in fact *less* qualified. *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004). "Similar qualifications do 'not raise an inference of discrimination.'" *Torgerson*, 643 F.3d at 1048 (quoting *Chock v. Northwest Airlines*, 113 F.3d 861, 864 (8th Cir. 1997)).

To ascertain if the hired candidates were less qualified, "a comparative analysis of the qualifications is relevant to determine whether there is a reason to disbelieve the employer's proffered reason . . . ." *Id.* Employers may consider many experiences and skill sets when making a hiring decision. *See Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 955 (8th Cir. 2012) (noting it is not the court's role to "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination").

Farver argues he was objectively more qualified for both the temporary and the permanent positions because of his hands-on experience with chemical equipment such as gas masks, grenade launchers, and M17s. Neither Adams, Warren, nor Wilson, who are white, had this type of broad of experience with chemical equipment. However, this alone does not show they were less qualified to fulfill the role because they had relevant experiences and skills Farver lacked.

Wilson's experience with M17s coupled with his mechanical experience was sufficient to establish he and Farver were similarly qualified. Adams's extensive experience with HVAC systems shows he had the mechanical skills Reed prioritized. Warren had considerable experience with engines from owning a trucking company. Although Farver had hands-on experience with the chemical equipment, his bona fide qualifications were largely limited to welding — not a skill Reed prioritized, as it was not required for the position. At best, Farver establishes he was similarly qualified for the one-year term positions.

As to the permanent position, Farver primarily relies on the computer generated "objective" scores for his argument. But the purpose of the resume-screening software is primarily to screen out unqualified candidates and draw attention to those who might be most qualified. The keyword search feature alerts employers to the candidates who incorporated words into their resumes that reflect the job description. There is no requirement the hiring be done solely on the basis of the computer rankings, and the decision-maker retains some authority to pass over highly ranked candidates he or she determines do not have the prioritized skills and experiences.

Farver argues Reed knew about his unassigned work in the motor pool with Lee, and therefore Reed's failure to credit Farver for those portions of his resume is pretext for discrimination. It is not irrational, though, for Reed to believe the experience of performing assigned tasks accompanied by formal training and supervision is more reliable. It is also not illogical for Reed to doubt and discredit portions of Farver's resume that alluded to working on equipment that, to Reed's knowledge, was not located in the areas to which Farver was assigned.

In sum, no reasonable factfinder could find Reed's decision was motivated by race. Such a conclusion would require speculation because Farver has not produced sufficient evidence to raise a reasonable inference of discrimination.

### III. Conclusion

For the reasons set forth herein, we affirm.

_____