# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 18-3491

———————————————

Sysco Minnesota, Inc.

*Plaintiff - Appellee*

v.

Teamsters Local 120

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: December 11, 2019
Filed: May 13, 2020

——————————

Before SMITH, Chief Judge, GRASZ and STRAS, Circuit Judges.

——————————

GRASZ, Circuit Judge.

Sysco Minnesota, Inc. ("Sysco Minnesota") brought this action against Teamsters Local 120 ("Local 120") under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for violating their collective bargaining

agreement ("CBA").  The district court[1] concluded Local 120 waived its right to arbitrate this dispute and granted summary judgment in favor of Sysco Minnesota in the amount of $1,238,315.  Local 120 appeals, and we affirm.

## I.  Background

Sysco Minnesota is one of Sysco, Inc.'s many wholly-owned distribution companies.  Local 120 is a local union affiliated with the International Brotherhood of Teamsters and represents a bargaining unit of employees working at Sysco Minnesota's distribution facility in Mounds View, Minnesota.  In 2017, Sysco Minnesota and Local 120 successfully negotiated and executed the CBA which is effective through August 2021.

Article 23 of the CBA contains a "No Strike; No Lockout" clause that states "there shall be no lockout, strike or any other interference with the operation of the business during the life of this Agreement."  And Article 24 contains a "Picket Lines" clause that states "no employee shall be requested or instructed to go through a primary picket line where a union is on primary strike."

A separate union, International Brotherhood of Teamsters Local Union No. 41 ("Local 41"), began representing a bargaining unit of employees working at Sysco Kansas City, Inc. ("Sysco KC") in 2014.  In November 2017, after years of unsuccessful attempts to negotiate their own collective bargaining agreement, Local 41 struck Sysco KC.  To gain leverage, Local 41 decided to set up a picket line hundreds of miles away, outside Sysco Minnesota's distribution facility.  Again, Local 41 did not represent workers at Sysco Minnesota, and it was not on strike against Sysco Minnesota. Officials of Local 120, who *did* represent workers at Sysco

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Minnesota, told members they could either cross or respect Local 41's picket line, and all but four of Local 120's members respected Local 41's picket line and refused to work. This caused significant disruption to Sysco Minnesota's operations.

Sysco Minnesota then brought this action for damages against Local 120 under section 301 of the LMRA, 29 U.S.C. § 185, claiming Local 120 breached the CBA's No Strike clause. In its answer and in its Rule 26(f) report, Local 120 asserted Sysco Minnesota's claim was barred by its failure to exhaust the CBA's prescribed grievance procedures, including arbitration. But Local 120 never moved to stay or dismiss the case on this basis. In addition to answering Sysco Minnesota's initial complaint and submitting a Rule 26(f) report, Local 120 stipulated to limited expedited discovery, answered the amended complaint, and participated in an initial pretrial conference. Shortly before the conclusion of discovery, Sysco Minnesota moved for summary judgment, and, after discovery concluded, Local 120 cross-moved for summary judgment on the merits. Local 120 had not asked the district court for relief under the CBA's prescribed grievance procedures before submitting its summary judgment briefs.

The district court granted Sysco Minnesota's summary judgment motion and denied Local 120's cross-motion. The district court concluded Local 120 waived its right to arbitration and that the undisputed facts showed Local 120 breached the CBA's no-strike clause. Sysco Minnesota submitted evidence, including an expert report, showing damages in the amount of $1,238,315, and Local 120 submitted no evidence or argument to the contrary. So the district court entered judgment in favor of Sysco Minnesota for that amount.

## II.  Analysis

Local 120 appeals the district court's waiver determination and grant of summary judgment on Sysco Minnesota's breach claim.  Having jurisdiction under 28 U.S.C. § 1291, we address these issues in order.

### A.  Waiver

"The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute."  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987).  However, a party waives its right to these procedures if it: (1) knew of its right to these procedures, (2) acted inconsistently with that right, and (3) prejudiced the other party with these inconsistent acts.  *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 862 (8th Cir. 2013).  "We review de novo the legal determination of waiver but examine the factual findings underlying that ruling for clear error."  *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007).  Because there is a "strong federal policy in favor of arbitration," we will resolve "any doubts concerning waiver of arbitrability" in favor of arbitration.  *Id.* (quoting *Dumont v. Saskatchewan Gov't Ins.*, 258 F.3d 880, 886 (8th Cir. 2001)).

Local 120 waived its right to the CBA's prescribed non-judicial grievance procedures, including arbitration.  First, Local 120 knew it had this right because it negotiated the CBA's terms and listed the CBA's grievance procedures as a defense to Sysco Minnesota's breach claim in its answer.  *See Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016) (finding a party "knew of its existing right to arbitration because it possessed the arbitration agreement").

Second, Local 120 acted inconsistently with its right to proceed under the CBA's grievance procedures. "A party acts inconsistently with its right to arbitrate if the party '[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right.'" *Lewallen*, 487 F.3d at 1090 (quoting *Ritzel Commc'ns v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993)). "A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." *Id.* "To safeguard its right to arbitration, a party must 'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.'" *Id.* at 1091 (quoting *Cabintree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)).

Here, Local 120 answered Sysco Minnesota's initial and amended complaints, stipulated to some expedited discovery, participated in a pretrial scheduling conference, jointly filed a Rule 26(f) report, and then, after all discovery concluded, responded to Sysco Minnesota's motion for summary judgment and cross-moved for summary judgment. Local 120 never moved to compel arbitration or to otherwise dismiss or stay the case in favor of the CBA's prescribed non-judicial grievance procedures. It first asked the district court to compel arbitration in its summary judgment briefing, nearly nine months after Sysco Minnesota filed its initial complaint. Given this procedural history, we have no trouble concluding Local 120 invoked the litigation machinery and failed to timely seek relief from the district court based on the CBA's prescribed grievance procedures. *See id.* at 1090; *see also Messina*, 821 F.3d at 1050 (finding waiver where a party proceeded in court for over eight months "by removing the case to federal court, filing an answer, participating in a pretrial hearing, filing a scheduling report which recommended a trial date and discovery deadlines, and filing a motion to transfer venue").

Third, had the district court ordered arbitration at the summary judgment stage, Sysco Minnesota would have been prejudiced. "Whether inconsistent actions constitute prejudice is determined on a case-by-case basis." *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 159 (8th Cir. 1991). "The prejudice threshold, however, is not onerous." *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 923 (8th Cir. 2009). "A party is . . . prejudiced when the 'parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts.'" *Lewallen*, 487 F.3d at 1093 (quoting *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003)).

Local 120's failure to seek relief under the CBA's prescribed grievance procedures in a timely manner caused the parties to complete all discovery and litigate the merits of Sysco Minnesota's breach claim. Moreover, it is hard to imagine how compelling arbitration at this stage of the case — after Sysco Minnesota had engaged in months of litigation — would not have required a duplication of effort, which is itself sufficient to constitute prejudice. *See Hooper*, 589 F.3d at 923–24 ("Compelling arbitration presumably would require a duplication of effort insofar as [the defendant] in arbitration would reargue issues upon which the district court ruled.").

Local 120 contends it did not waive its right to the CBA's grievance procedures because it had no choice but to defend itself against Sysco Minnesota's lawsuit and because it asserted in its answers and the Rule 26(f) report that Sysco Minnesota failed to comply with the CBA's grievance procedures. These arguments are unavailing. Local 120 had the choice to file a motion to dismiss or compel arbitration and chose not to. *See Lewallen*, 487 F.3d at 1090 (explaining that failing to move to compel arbitration and stay litigation in a timely manner is inconsistent with the right to arbitrate). And preserving the CBA's grievance procedures as a defense in its answers and in the Rule 26(f) report is not the same as actually asking

the district court for the appropriate relief under the CBA in a motion. *See Hooper*, 589 F.3d at 923 ("A reservation of rights is not an assertion of rights.").

The district court did not err in finding Local 120 waived its right to the CBA's grievance procedures, including arbitration.

## B. Grant of Summary Judgment

The district court granted Sysco Minnesota's motion for summary judgment on its claim that Local 120 breached the No Strike clause in Article 23 of the CBA. On appeal, Local 120 argues the district court erred because the refusal to cross Local 41's picket line was permitted by the Picket Lines clause in Article 24 of the CBA and protected by section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157, which protects sympathy strikes. Local 120 also argues it is not liable for its members' refusal to cross Local 41's picket line. These arguments lack merit.

We review the grant of summary judgment de novo. *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

### 1. The Picket Lines Clause

"Federal substantive law applies in suits under § 301, but we may look to consistent common law rules of contractual interpretation for guidance as long as their application is consistent with federal labor policies." *Allied Sales Drivers, Local No. 289 v. Sara Lee Bakery Grp.*, 746 F.3d 342, 346 (8th Cir. 2014) (quoting *Int'l Union of Operating Eng'rs Local 571 v. Hawkins Constr. Co.*, 929 F.2d 1346, 1349 (8th Cir. 1991)). When interpreting a collective bargaining agreement, "we begin by examining the language of the documents which form the basis of the agreement."

*Hawkins*, 929 F.2d at 1349. We construe the agreement as a whole giving meaning to all its terms and reading them in context. *Sara Lee*, 746 F.3d at 346. "When the intent of the parties is unambiguously expressed in a [collective bargaining agreement], that expression controls, and the court's inquiry should proceed no further." *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 766 (2018) (quoting *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 443 (2015) (Ginsburg, J., concurring)).

Article 24's Picket Lines clause states "no employee shall be requested or instructed to go through a primary picket line where a union is on primary strike," and Local 120 maintains this clause allowed its members to refuse to cross Local 41's picket line. The district court rejected Local 120's position, concluding Local 41's picket line was not a *primary* picket line where a union was on *primary* strike. On appeal, Local 120 argues the district court misinterpreted the term "primary."

Sysco Minnesota and Sysco KC are distinct entities that separately bargain with Local 120 and Local 41 respectively. Local 41 struck Sysco KC and had no dispute with Sysco Minnesota; it only picketed Sysco Minnesota to gain leverage in bargaining with Sysco KC. Local 120 contends Local 41's picket line outside Sysco Minnesota's facility was nevertheless "a primary picket line where [it] [was] on primary strike" because Sysco Minnesota and Sysco KC are both wholly-owned subsidiaries of Sysco, Inc. In other words, Sysco Minnesota and Sysco KC are effectively the same employer due to their common-ownership, making Local 41's labor actions against Sysco Minnesota primary. We disagree.

The terms "primary picketing" and "primary strike" come from section 8(b)(4) of the NLRA, 29 U.S.C. § 158(b)(4)(i)(B), which legalizes primary strikes and primary picketing by labor unions[2] but prohibits secondary activity intended "to

_____

[2]A primary strike is "directed against the employer with whom the union has the dispute concerning terms of employment," and primary picketing involves

-8-

enmesh neutral secondary employers in primary labor disputes between the union and another employer." *Ruzicka Elec. & Sons, Inc. v. Int'l Bhd. of Elec. Workers, Local 1*, 427 F.3d 511, 519 (8th Cir. 2005) (quoting *NLRB v. Constr. & Gen. Laborer's Union Local 1140*, 577 F.2d 16, 18 (8th Cir. 1978)). Distinguishing between lawful primary activity and unlawful secondary activity can be difficult, *see id.* at 519–20, but federal courts have long rejected Local 120's argument that picketing an otherwise neutral employer is primary activity simply because the neutral employer and the primary employer with whom the union has a labor dispute are commonly owned. *See, e.g.*, *Bachman Mach. Co. v. NLRB*, 266 F.2d 599, 605 (8th Cir. 1959); *see also Am. Fed'n of Television & Radio Artists, Washington-Baltimore Local v. NLRB*, 462 F.2d 887, 888, 892 (D.C. Cir. 1972). The inquiry is more fact intensive than that. *See Bachman Mach. Co.*, 266 F.2d at 605; *see also Am. Fed'n of Television & Radio Artists*, 462 F.2d at 892.

Here, the only fact Local 120 relies on to establish that Local 41's picket line outside Sysco Minnesota was a primary picket line where it was on primary strike is that Sysco Minnesota and Sysco KC are commonly owned. But because common ownership alone is insufficient to establish Local 41's picket line was a primary picket line where it was on primary strike, Local 120 has failed to demonstrate that Article 24's Picket Lines clause allowed its members to refuse to cross Local 41's picket line.

---

"picketing, generally at the situs of the primary employer, that attempts or is intended to increase the direct economic pressure on the primary employer by inducing others to honor the strike." *Landgrebe Motor Transp., Inc. v. Dist. 72, Int'l Ass'n of Machinists*, 763 F.2d 241, 245 (7th Cir. 1985); *see also United Steelworkers of Am. v. NLRB*, 376 U.S. 492, 499 (1964).

## 2. Sympathy Strike

Next, Local 120 argues that refusing to cross Local 41's picket line was a statutorily protected sympathy strike.[3] The district court concluded Local 120 waived that protection in the CBA, and we agree.

"Section 7 of the [NLRA, 29 U.S.C. § 157], generally protects employees who engage in sympathy strikes in support of a lawful, primary strike by another union." *Amcar Div., ACF Indus. v. NLRB*, 641 F.2d 561, 566 (8th Cir. 1981). "However, in the collective bargaining agreement, employees may waive their right to engage in sympathy strikes." *Id*. (citing *NLRB v. Rockaway News Supply Co.*, 345 U.S. 71, 80–81 (1953)). The waiver can be express or implied, but "an implied waiver must be 'clear and unmistakable.'" *John Morrell*, 913 F.2d at 551 (quoting *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983)). In addition to the language and structure of the collective bargaining agreement, courts may look to the parties' bargaining history and any other relevant conduct that shows their understanding of the contract. *Amcar*, 641 F.2d at 567.

The No Strike clause in Article 23 of the CBA states: "In order to assure stabilized employment and uninterrupted service, the parties hereto mutually agree that there shall be no lockout, strike or any other interference with the operation of the business during the life of this Agreement." Citing our decisions in *Amcar* and

---

[3]"A sympathy strike involves two unions; one is striking to force some concession from the employer; the other strikes in sympathy with the first's objectives. Sympathy strikes are a common manifestation of traditional union solidarity." *John Morrell & Co. v. Local Union 304A of United Food Workers*, 913 F.2d 544, 548–49 n.4 (8th Cir. 1990) (quoting *Sympathy strike*, Black's Law Dictionary (5th ed. 1979)); *Sympathy strike*, Black's Law Dictionary (11th ed. 2019) ("A strike by union members who have no grievance against their own employer but who want to show support for another union involved in a labor dispute.").

*John Morrell*, Local 120 contends this language is too general and cannot be read to constitute a clear and unmistakable waiver of the right to engage in sympathy strikes. We disagree.

In *Amcar*, we held that a no-strike clause stating "there shall be no lock out, strike, stoppage of work or slow down" was "insufficient, in and of itself, to constitute a waiver of the right to engage in sympathy strikes." *Id.* Only after considering the parties' bargaining history and other relevant extrinsic evidence did we conclude the union clearly and unmistakably waived the right to engage in sympathy strikes. *Id.* But here, Article 23's No Strike clause goes significantly further than the no-strike clause in *Amcar* by prohibiting not only strikes generally but "*any other interference* with the operation of the business." (emphasis added); *see Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31 (2004) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting *United States v. Gonzalez*, 520 U.S. 1, 5 (1997)). In our view, this language clearly and unmistakably encompasses sympathy strikes generally.

This view is reinforced by the CBA's separate inclusion of Article 24's Picket Lines clause. Read together, Article 23 prohibits sympathy strikes in general, but Article 24 then carves out the ability to engage in a specific kind of sympathy strike, i.e., employees retain the right to respect another union's primary picket line where it is on primary strike. This structure indicates Article 23's No Strike clause refers to sympathy strikes of any other kind. *See R.L. Coolsaet Constr. Co. v. Local 150, Int'l Union of Operating Eng'rs*, 177 F.3d 648, 658 (7th Cir. 1999) (explaining that an "exception for certain sympathy strikes . . . strongly implies that sympathy strikes in general were included in the no-strike clause"); *W-I Canteen Serv., Inc. v. NLRB*, 606 F.2d 738, 745 (7th Cir. 1979) ("It follows from the phrasing of this [picket-line] clause as an express exception that the no-strike clause relates to sympathy strikes as well."). Accordingly, the CBA waived the right to engage in any sympathy strike not expressly preserved in Article 24's Picket Lines clause. And as discussed above,

Local 120 failed to establish that its members' refusal to cross Local 41's picket line was permitted by Article 24.

Local 120 also argues the district court should have considered extrinsic evidence, including the parties' bargaining history, in determining whether the right to engage in sympathy strikes was waived. We have, in prior cases, taken this approach. *See Amcar*, 641 F.2d at 567; *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters N. Am.*, 597 F.2d 1138, 1144 (8th Cir. 1979). But it is not necessary where, as here, the language and structure of the collective bargaining agreement as a whole are unambiguous and are, themselves, enough to clearly and unmistakably prohibit the kind of sympathy strike engaged in by the union. *See Sara Lee Bakery Grp.*, 746 F.3d at 347 (explaining extrinsic evidence should not be considered unless the language of the collective bargaining agreement is ambiguous or is reasonably susceptible of another proposed meaning).

### 3. Union Liability

Finally, Local 120 argues it is not liable for its members' refusal to cross Local 41's picket line because Local 120 did not authorize, participate in, or ratify the picket line.

The Supreme Court has explained that for claims under section 301(a), Congress "stopped short of imposing liability upon a union for strikes not authorized, participated in, or ratified by it." *Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212, 216 (1979); *see also Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 415–16 (1981) (stating "Congress deliberately chose to allow a damages remedy for breach of the no-strike provision of a collective bargaining agreement only against *unions*, . . . and . . . *only when* [*the union*] *participated in or authorized the strike*.") (emphasis on "unions" in original). Here, Local 120's officers expressly authorized members to respect Local 41's picket line by telling them they had the option to either

cross or respect the picket line. Further highlighting its authorization to respect Local 41's picket line, Local 120 parked its tractor-trailer outside the Sysco Minnesota facility near the picket line and provided refreshments to the strikers. Thus, we are not persuaded that Local 120 did not authorize, participate in, or ratify the picket line.

## III. Conclusion

We affirm the district court's grant of summary judgment.

_____